Similarly, as Pace v. Ford, 2017, 1387 and 1406, and Mr. Cordell's doing double duty, but Mr. Moore, that's a break. I objected to that before the hearing, Your Honor. I just want you to know. Please proceed, Mr. Cordell. Thank you. The primary issue in the 1387 appeal has to do with incorporation of reference. The fundamental issue revolves around, in the chain of priority, there was a PCT that was filed, and Ford claims that it is 102 reference, because the inventor couldn't prove possession of the information that was set forth in the PCT prior to its critical date. In this case, the record is very clear that the application at issue incorporated by reference the material that was necessary. Mr. Cordell, it seems to me that it isn't clear at all. This isn't a clean incorporation by reference. The statement says where differences are not mentioned. All right. Let's be understood that this is incorporation by reference, but the obverse is where there are differences. Then it was not incorporation by reference, and there are differences here. The numbers are different. Well, so let me address that in stages, if I may. So the first sentence of the incorporation, and this is at Appendix 11, this application discloses a number of improvements over and enhancements to the hybrid vehicles disclosed in inventors, and I'm reading from the wrong place. My apologies. The incorporation by reference statement is, in fact, very clear. That's not a clean incorporation by reference. And it provides for an exception that applies, because the current and the voltage numbers in the 634 claims and the 970 patent are different. And that's what the board, that's why the board found no incorporation. Well, if I can just begin with the first sentence of the incorporation I now have in front of me. Column 18, lines 24. This application discloses a number of improvements over and enhancements to the hybrid vehicle disclosed in the inventors U.S. patent 5343970, the 970 patent, which is incorporated herein by reference. So if the application had stopped there, I think no one would have disputed that the 970 is incorporated by reference. And so the question then becomes, what does the law require for incorporation by reference, and does the second sentence that Your Honor mentioned somehow disable that incorporation? So the jurisprudence of this court has been very clear that when an applicant incorporates by reference, he or she is given the benefit of that incorporation. And we haven't nibbled at the edges. We haven't detracted from it. And the decision that we think is foursquare with where we are today is the Harari v. Lee decision. Because in that decision, there was the same level of incorporation by reference, and then there was a later statement that said there are specific aspects of the prior disclosure that will be incorporated herein. And this court decided that while that second incorporation was arguably inconsistent with the broad incorporation that happened initially, that we're not going to go there. We're not going to start to nibble at the edges of what has been a very bright line and useful test, so that when an applicant says, I'm including the 970, I get to include the 970. The legal requirements are very clear. You have to specifically identify what it is that you're incorporating. And here that was done by patent number. It could not be clearer. And then the second requirement is that the disclosure be available to those of ordinary skill in the art. Again, a patent is readily available. So it meets that requirement. And if we're going to credit the second sentence as somehow disabling that, we're going to force the issue where we're second-guessing, we're creating a trap for the unwary, where every characterization of the reference could now be arguably a disabling characterization. So in this particular case, I counted 49 references back to the 970 patent, including specific descriptions of how the electrical aspects of the 970 patent are used in what became the 634 patent specification. Well, do you read Harari to say that we just ignore any qualifications? I don't, but I read Harari as saying that to the extent that there is a qualification, it must be at least of equal dignity and perhaps even clearer in order to defeat the clear incorporation by reference that is made. So we can't simply say, well, there's a characterization of the prior disclosure. There's a discussion of it, and somehow that would defeat it. That simply can't be the law. But more to the point, Your Honors are all familiar with the way that we patent lawyers put 16 embodiments into an application, and they're often inconsistent. In this case, sometimes we've had embodiments with two electric motors. Sometimes it's one electric motor. The fact that I have different disclosures and they might be somewhat inconsistent with one another doesn't answer the fundamental question, because when we return to first principles, what are we asking? We're asking whether the inventor was in possession of the subject matter at a particular date. And he shows that by incorporating by reference. He shows that by pointing to the 970 patent and saying, I am in possession of this material. And it turns out this material has become an issue because Ford says that it wasn't disclosed originally and added, and therefore the 455 PCT becomes an invalidating reference. You need the incorporation by reference. Well, I will posit that it's a very important issue, certainly. But we believe we deserve it because, again, we have to look at the incorporation through the lens of how this evidence is to be used. Is it to be used as a way to defeat a claim of written description, perhaps? Or is it used for other purposes? It could be lots of different reasons. Can I just see if I'm clear about the following and whether you agree with it? The first sentence of the crucial passage says the patent, the whole thing, is incorporated by reference. And in the very sense, it acknowledges that there are going to be differences, right? Because it refers to we've got enhancements and improvements. The second sentence doesn't use the language of incorporation by reference. So it might not, in fact, be talking about the relationship between the two documents. It is now talking about something else, something about features being applicable. I think you said in your blue brief a couple of times that's just the preferred embodiment. That seems a little bit too narrow. It might be all of the embodiments. But even if you've got a vacator on the ground that this document actually, the 970 Severinsky, is actually incorporated by reference, that doesn't answer a question that the board did not find it necessary to ask and answer. Does the expanded document, 817 now with all the extra pages from the 970, provide the adequate written description support for, say, Claim 58, a vehicle for a current maximum of whatever that one says, 150? So I would say two things. I would say, number one, that Ford at several points essentially admitted that the combined document would, in fact, support the written description necessary to defeat the 455 application. But having said that, I acknowledge the board didn't do that analysis. And would it be reasonable for this court to send it back? Sure. Would I prefer a reversal? Yes. Part of the reason, I guess, is the slightly mysterious language of the second sentence. These features are not applicable to the vehicle shown, or some language quite like that, right? Yeah, applicable to the vehicle shown here. I wonder if that raises a question whether if you start with, say, Claim 58, one of the current claims, which is a vehicle meeting all the Claim 1 requirements in which the current to the electric motor stays below a maximum of, I think that's 150 amps. 150 amps, yes. So might that second sentence say we're not actually here showing a vehicle that meets all the new stuff about torque and has this current maximum? But that's a written description question, not an incorporation question. Well, exactly. And you could have disclosures that are inconsistent. So I view that second sentence as a way for the reader to rationalize things that may seem inconsistent and therefore allow you to sort out the embodiments. But that's not the question we're answering. The question we're answering is not ultimately what is the best approach. The question we're answering is what did the inventor possess as of the date of that filing? And as a result, he's entitled to the entirety of what he'd incorporated by reference, even if he denigrates it later, even if he says it's not useful, even if he says it's bad, or you shouldn't use it in all cases. But that's an argument possibly for remand if you win on the incorporation by reference point. I think that's right. I think that ultimately what we're talking about here, again, I'm sure Mr. Moore, my colleague will take a different view of what they did. But what we view is that Ford, as part of this process, has attempted to backfill that record and to try to create enough to at least ask for a remand. But at the board level, they didn't do that. You said that Ford didn't argue that a written description wouldn't be satisfied if we conclude that the board was wrong with its incorporation by reference. But they never actually conceded that point, did they? I don't think they conceded. I think that's going too far. What incentive would they have had to argue that point instead of simply saying, we don't even get there? Well, that was certainly their position, is that the 970 was not incorporated by reference, and therefore there was no reason to reach that issue. And that's ultimately what the board decided. And so the board's decision, again under Chenery, was we don't need to go into the details because we don't believe the disclosure was, in fact, incorporated. But given that the description is a factual determination, we have to send it back, wouldn't we? Again, I'm struggling for a reversal, which is what I really want. The reality is that the analysis is very detailed and very precise, and I freely admit that. But the board should have done it. They should have done it based on the record they were given. The record they were given didn't include that analysis. But again, would it be reasonable for you to send it back? Of course. I have a vague recollection. Tell me if my recollection is wrong. You make a specific point about Claim 293. Am I remembering that you say even if you're wrong about incorporation by reference, the 817 application teaches, provides 120 written description support for Claim 293, and that Ford never argued to the contrary. Well, so I think what we did with Claim 293 is say that Ford doesn't meaningfully dispute the electrical limitations for things like Claim 293 as having been disclosed in the 970 patent. If I'm remembering Your Honor's question correctly. There's a separate analysis where we believe the board simply failed to reach some of the critical limitations of the claims. So, for example, in Claim 290, it talks about operating the engine at levels less than the set point under abnormal and transient conditions. And we believe the board just missed these. They simply didn't do any analysis of things, for example, at Claim 290, the abnormal and transient conditions limitations. The same would be true for the FUD's limitations. So what I'm thinking of, I guess, is at the bottom of 26 of your brief at the top of 27. This is where you say, even putting aside the separation of 970 Severinsky, look at what the 817 application says. These disclosures are sufficient for the, I guess it's 75 amps of 293. In fact, and now this is italicized, not even Ford argued that this limitation was not disclosed by the 817 application. And you cite to the certain pages of their petition, which I think do not discuss Claim 293. And we maintain that argument, Your Honor. Thank you. That is a very forceful argument from our perspective. And just to tie it off, 293 depends from, I believe, 292, which also has the voltage limitation in it. And if I could stay with the incorporation by reference, it also bears mentioning that this is Ford's burden. So the way the case law breaks down on this incorporation by reference issue is that it is our burden to come forward with production. We need to point to some evidence that would allow the issue to be live, which we've done. We've got our seminal sentence that says it's incorporated by reference. The burden then shifts to Ford to prove by clear and convincing evidence that it was not incorporated by reference. And we get that from the Tech Licensing Corp. v. Video Tech Inc. case 545 F3rd 1316. And then the pen side is 1327 through 28. But we have a decision by the board. And we're reviewing the decision of the board, which is entitled to reference on this issue, don't you think? That's true, but this is reviewed de novo as a matter of law under Harari v. Lee. That was very clear. And so you have the power and the duty to review it in the first instance. And so Ford's burden remains. They have a clear and convincing burden to negate the incorporation by reference. And I do think that's an important part of it. The entirety of the disclosure, if we're going to go to that second sentence, we need to go through the entirety of the disclosure. And the disclosure over and over again talks about the fact that the 634 patent incorporates the electrical aspects of the 970. If I could just highlight one of them. So at the 634 lines, column 11, 14 through 25, which is appendix 627, which is also in the 817 application, which is at appendix 11175, it reads, the hybrid drivetrain shown in the 970 patent has many advantages with respect to the prior art, which are retained by the present invention. For example, the electric drive motor is selected to be of relatively high power, specifically equal to or greater than that of the internal combustion engine. And to have high torque output characteristics at low speeds, this allows the conventional multi-speed vehicle transmission to be eliminated. As compared to the prior art, the battery bank, motor generator, and associated power circuitry are operated at relatively high voltage and relatively low current, reducing losses due to resistive heating and simplifying component selection and connection. The entirety of that specification makes it very clear that whatever you think of the second sentence, the so-called debilitating sentence, it can't be overread. It can't be overread. And again, when we return to first principles, the question is, what did the inventor know as of the date that he filed that application? And it's clear that he knew of the 970 and incorporated it by reference. Ford makes mention of the Holman v. Harari decision and suggests that that somehow lies in tension with the Harari v. Lee decision, and we disagree with that. The Holman decision really turned on whether or not there was a proper identification of the material to be incorporated. There was an ambiguity because of the way the applications were filed before patent or application numbers were assigned to them. And so in later applications, they referred to the application filed on the same date of this particular filing, and that was no longer true. And so that ambiguity is what the case turned on. It had nothing to do with whether the incorporation by reference was sufficient or not. It had to do with the ambiguity in the filing of the application. So I just want to put an oar in the water on that and hear from my colleague. With respect to the other issues remaining in the 1387 appeal, I mentioned before a little bit about the abnormal and transient conditions issue, that in Claim 290, for example, it reads, The method of Claim 267 further comprising operating the engine at torque output levels less than the SP or set point under abnormal and transient conditions to satisfy drivability and or safety considerations. The board simply didn't address these in the way that they really should have in order to meet the Chenery. The first thing they did is they included the idea that you can start the engine as an abnormal or transient condition. But remember, Your Honors, the whole idea behind the comparison to set point is to start the engine. So if you say that starting the engine is an abnormal and transient condition, you've consumed the condition under which the decision is being made. You can't say that starting the engine below set point is OK when you're in an abnormal and transient condition and say that starting the engine is that condition. It's a circular analysis that really gets us nowhere. Starting the engine is not transient? The engine is transient. And there's a piece of the prosecution history where Pace's attorney explained that when you start the engine, there is a transient period after you start it. But that doesn't satisfy the claim. The claim requires there to be an abnormal and transient condition that allows you to start the engine below set point. So that's the fundamental decision that you're making at that moment in Claim 290. But more to the point, the idea is that the PTAB should have addressed these issues and they should have given us real analysis under Chenery as to the abnormal and transient condition. In all circumstances, we assess alleged Chenery violations in context, and part of it has to do with what the technology is that they're talking about, and it has to do with our ability to look at their familiarity with the entirety of this record, right? That's true. But, again, what we're talking about here, so, for example, there are also claims, say, for example, in Claim 279, that talks about, that actually says this is when you start and stop the engine. That is the sum total of what needs to be shown. And Ford's response, and the PTAB pointed to this, was that, of course, you start and stop the engine. I mean, that must happen at some point. But whether or not it happens at some point is not the inquiry. The inquiry is whether or not it starts and stops because something has happened, because road load has exceeded a set point. Now, that set point may be adjusted for a reason. There's a cause and effect relationship there that is completely missing from this record, and so the board should have done that analysis. I think they just missed it. So, and those were claims 91, 92, 125, 126, 252, 253, 278, 279, and 282. Chattery says the PTAB simply can't make a decision. They have to actually give us something to examine, and Cutsforth, a decision that we're very familiar with, reiterated that and made it very clear. If I could spend just a few moments on the 1406 appeal, unless there are any further questions on 1387. The 1406 appeal extends the abnormal and transient condition analysis to the 097 patent. And the claims say, again, that you operate the engine when the road load is below a set point under abnormal and transient conditions. There are only four claims that remain, is the good news, because the prior appeal decided much of this, so the only claims that remain in the 1406 appeal are 7, 17, 27, and 37.  We didn't do it as explicitly as we did in the prior appeal, the 1387 appeal, but we do argue that, in fact, the claim construction is live for two reasons. Number one, the abnormal and transient conditions limitation remains the same. There's a distinction in that the drivability and safety considerations that we saw in the 1387 appeal, they're a little bit different in the 097. However, the PTAB made the same decision. They also evaluated the abnormal and transient conditions limitation through the lens of the construction of drivability and safety considerations. And that became very odd when you read the PTAB's opinion, because they key on the idea that battery life is an abnormal and transient condition. And that was something that surprised us when we read it in the opinion. They say that battery life somehow deals with safety or drivability because the prior art talked about making changes to the system in order to enhance battery life, the 970 patent in particular. We don't think that there's any basis to extend the construction of abnormal and transient conditions to battery life. And even if it is, it's an example of the board not doing the work they needed to do to explain why that would be included, because those two concepts simply don't have much to do with it. So in this context, what would you think abnormal and transient conditions have to be? So you could, for example, have a situation where the engine suffers a fault or the electric motor suffers a fault is probably a better example. So the main motor, the main traction motor in the system suffers a fault and therefore you have to start the engine below set point because the vehicle won't move without it. So that would be an abnormal and transient condition writ large. But you're not arguing that Severinsky has to disclose starting or stopping the engine in order to disclose this abnormal and transient conditions limitation. That's true. We believe that starting and stopping the engine is not an abnormal and transient condition and that's made perhaps clearer in the last appeal because we have claims that specifically talk about starting and stopping the engine apart from the abnormal and transient conditions limitation. So if there are no other questions, I'll reserve a little time. We'll save five minutes plus for you. Thank you. Mr. Bell. Thank you, Your Honor. May it please the court. I'd like to start with something my friend said on the other side with which I agree. He said the patentee has to show possession of the invention. Then he said something that I disagree with. He said in this case he showed it by pointing to the incorporation by reference clause to Severinsky. But by way of a little bit of background, when the inventor first put this material in the specification was in 2001. That's in columns 50 and 51 of what ultimately became the 634 patent. There's no dispute about that. That's when those columns first appeared. And then when the inventor put the electrical claims into the patent later as an amendment in 2006, it's telling what the patentee pointed to to show support. Pointed not to a vague incorporation by reference clause, and I agree it's very ambiguous. Pointed not to the 817 disclosure alone. What did the patentee point to? The patentee pointed to those two, those very two columns, columns 50 and 51, and said those clearly support the electrical claims. But I'm not sure I understand how you get around Terraria versus Lee. It was specifically said if there is a broad incorporation by reference, then you're bound by that and you get it both. And the fact that there might be some other phrases later in the disclosure that implies that maybe there's something you're not relying on for that particular piece, that doesn't change the full incorporation by reference. We don't dispute that that's what Harari teaches, that if you have two separate incorporation clauses, one that happens to be broader and one that happens to be narrower, as you say, the narrow one doesn't negate the broader one. The issue here is a little bit different, and Harari itself talks about reading all of this in context, as you always read a specification in context. And in this context, there are not two incorporation clauses, there's one. And it talks about incorporating, as you say, Judge Toronto, improvements, i.e. differences. No, it doesn't say that. It says there are improvements and enhancements of what we said in the 970 patent, comma, which is incorporated. It's the whole patent that's incorporated in a sentence that recognizes that there are differences. Fair enough. And the next sentence doesn't talk about incorporation in terms. You're arguing that, and the Board found that, impliably it does in its language about details that are applicable to the vehicles shown in the current one. Precisely, and it's the juxtaposition of the two sentences back-to-back that we submit that the Board correctly recognized that a person of ordinary skill would look at that, that incorporation, as you say, it talks about the patent. It also talks in that sentence about improvements. And in the very next sentence, it says where there are differences, or where there are differences between the two. And we submit the Board correctly read that as saying differences are not incorporated. And the fact that it doesn't use the word incorporation in the next sentence doesn't mean that it doesn't speak to the scope of the incorporation. And a great case to look for for that proposition is the Callaway case that my friend cited in their brief in a footnote. In Callaway, there was one sentence that talked about employing certain features of the prior art. It didn't mention incorporation at all. And this court said that read on the scope of the incorporation, that determined the scope of the incorporation. So merely not having the word incorporation is not dispositive. It's, again, the whole context, which Harari talked about, read everything in context. Another great case to look at, I think, is the Husky case, and that's 838F3 at 1249, where there were two separate clauses that talked about a certain prior art reference. One of them said cross-references to the prior art are hereby incorporated. The other reference said the prior art certain features are brought in, or something to that effect. And this court did not simply jump and say, well, there is a holistic incorporation here, so we don't need to look at the other one. It looked at both in context and said, at least what we know is that certain things are incorporated. And so that, again, supports the notion that this has to be a holistic inquiry, which we submit the board properly did. The board's expert came to the same conclusion that a person of ordinary skill would read these two in concert. And so the question then becomes, once you read those two together, is it sufficiently detailed, detailed particularity? And I disagree that there's some sort of additional burden here. Again, it's looking at the context as a whole, reviewing the board's decision de novo, but it is certainly illustrative that the three board members and Ford's expert all thought a person of ordinary skill would read these together. Again, not simply. The incorporation language in the 347 is the same as the incorporation language at issue here, right? In the 347 patent? Yes. And we found that that language was sufficient to incorporate Severinsky in its entirety, right? We didn't draw any of these qualifications that you're trying to draw. I don't believe any arguments were raised, and I don't recall the exact context of that. But certainly in the context of this case, the board looked at both together because it was Pace that was trying to, in this case, bring in the incorporation to antedate what I think was clearly intended to be the support for those claims in 2001. So I would submit it's a substantially different situation. Well, a substantially different situation because in one case the incorporation, by reference, invalidates the patent and in the other case it doesn't, right? Again, I don't recall the exact context for what those statements were, but I think certainly in this case, reading them together. You're saying it wasn't dealt with there for that reason. It wasn't determined. Exactly. Exactly. And so what we have here are differences. So we know that there's not incorporation in full, but even if we thought there were some amount of incorporation of Severinsky, certainly the electrical components themselves, those are different between the 817 and Severinsky. In the 817 you have a 768 voltage embodiment open circuit, i.e. not under load. In the Severinsky you have up to 75, excuse me, you have 500 to 1500 voltage, and those are open circuit and you just simply can't compare those two, so those are different. If we were to disagree with you on the incorporation by reference, what's your response to Mr. Kurdel's argument that we could reach a determination on written description on the face of the materials without having to remand? I would disagree, Your Honor. I think this is quintessentially what Chenery talks about, that the type of situation where the board is empowered to make that judgment in the first instance, it's a fact question, intensely factual question, actually this court has called it written description, and we certainly didn't concede it. At page 50 of our brief we pointed out that the correct procedure at that point would be to remand for the board to address in the first instance, but in any event we do think that we have a strong case that incorporating Severinsky wouldn't solve their problem for much of the same reasons we've talked about because there are so many differences, and so the ranges you end up with are not sufficient support for the ranges that were ultimately claimed, and that's our position, and I can go into that further if you like, but our position is that should be for the board in the first instance, if you disagree with the incorporation by reference. And so I wanted to make one other point. My friend spoke at one point about if there's not incorporation by reference, at a minimum the 817 application alone would support certain claims. And so just to clarify what claims those are, they only make that argument as to the amperage claims. So as to the voltage and the ratio claims, they don't make any argument that 817 alone supports those. So we're only dealing with the amperage claims there, and we would submit again. And what about specifically, I think I asked about claim 293. Yes. Yes, Your Honor. And Pace says at page 26 through 27 of its brief that Ford did not contest as to 293, the sufficient disclosure in the 817 of that claim. So I believe at the pages they cited we did not raise that. But here's why it doesn't matter. As my friend pointed out, the 293 claim incorporates by reference, it's a dependent claim, to 292. And 292 has the voltage limitation. So if that's not supported, and we're assuming by now that there's no incorporation by reference and they're just relying on the 817. And for that they only made the argument as to the amperage claims. So we would have a limitation that would not be supported. What do you mean they only made the argument as to the amperage claims? In the blue brief at the pages that I cited, they expressly make the argument that the 817 application, even without incorporation of 970, Severinsky supports 293, and you never disputed that. And so just to clarify, the 75 claim that they're talking about is an amperage claim. Yes. So I'm including that in the set of things that they are making the argument about. The 75 amp limit and the 150 amp limit. And so they cite pages from our brief below and admittedly did not address 75. And so I'm just explaining now why it doesn't matter. Once we've determined that they only have the 817 to rely on, in other words, we're assuming no incorporation by reference, and you only have the 817, there is also in that very claim a voltage limitation that would therefore not be supported. And they're not making the argument that the 817 alone supports the voltage. Therefore, the dependent claim, even let's assume that 75 limitation would be supported. The claim as a whole wouldn't because it incorporates the 292 voltage limitation. What about the turning the engine on and off limitations? I mean, it does, even giving the board a break, I mean, all they did was cite to the petition, which in turn cites to your own expert. They didn't do any other analysis. How do we say that's enough? Well, my response, Your Honor, is to look at how and what the other side raised as to these claims. The only argument for patentability over the prior art that they made as to these claims, what I call the on-off claims, was the same argument they made as to the underlying claims, i.e. Severinsky doesn't teach a torque-based control system. It teaches speed-based. And so in a footnote at A24363 Note 2, that's where they raise the issue and they say, oh, and for that same reason, the on-off claims are also patentable. So if we find that Severinsky teaches a torque-based system, you say all of the claims fall. That's right, and they have now conceded in this appeal that Severinsky does teach a torque-based system, as this court previously held, and so the other side wisely narrowed the appeal in the reply and jettisoned that issue as to the underlying claims, and therefore it immediately follows that they have no basis to contest on the on-off claims, because that's the only basis they raised, and the board rejected that expressly, explained in page A98 Note 3, and said Pace is only arguing the same argument they made as to all the other claims about speed versus torque, and therefore the argument fails as to these claims as well. And that's certainly sufficient explanation, as this court held invasive and in other cases where the explanation of the board only needs to be commensurate with the arguments raised, and this was a kind of throwaway argument. Anyway, all the arguments we heard now about causation and on-off were not the reasons they gave below, and so even if you accepted that it was somehow raised below beyond the speed versus torque comparison, there's certainly substantial evidence to confirm that a torque-based system, whereby the engine turns on and off when it needs to, will turn on and off. I mean, it's hard to imagine something more obvious than that. So all of that in total, the board cannot be faulted for not saying more than Pace itself did. Finally, as to the abnormal and transient conditions claims, the patentee itself expressly in the file history said that turning the engine on and off is precisely the type of abnormal and transient condition that was contemplated. That's at A12489. I don't believe my friend referred to that, but that makes a very clear statement, and it makes sense, because when you turn the engine on and off, for example, in city traffic to charge the battery, there's going to have to be a ramp-up time, whereby the engine starts at nothing and moves through its inefficient range and perhaps gets to its efficient range, or perhaps not. Severinsky actually teaches a situation where, and what Severinsky says is, on occasion, it would make sense for the engine to be used inefficiently. For example, if you're in city traffic and charging the battery, it didn't mean to limit it to that, but that's certainly one example. And so that is the abnormal and transient condition claims, and those are the only four claims that are involved in the other appeal as well, the 1406 appeal. And so finally, I would just conclude, unless the court has other questions, a return to where I started, that if you want to take the patentee at its word, it didn't point to a vague incorporation by reference clause. It didn't point to other aspects of the 817 application to support its new electrical claims. What it said was it was supported by columns 50 and 51, and the board recognized this at A19, and at A8977 is where the patentee said, it's those columns. And so the patentee knew how to support those claims and did not do so, did not incorporate by reference. We submit the board's decision should be affirmed. Thank you, Mr. Bell. Thank you. Mr. Cordell, the board distinguished Harari by pointing out that the so-called qualification there was several pages later, whereas the qualification here was really in the same paragraph. It was part of the incorporation by reference statement. There's a big difference there, isn't there? I disagree, Your Honor. I think that if we start down that path, it's a very difficult one to tread. What's the path? Well, the path is deciding how closely the statements are made to one another. If you read the statement that we're talking about here, which is, I guess, at column 10, lines 40 plus, it actually concludes with a sentence saying, don't misconstrue the claims of the 970 patent. And therefore, you could argue that that middle sentence, the one that Ford claims is disabling, somehow deals with its impact on the 970 patent rather than on its incorporation by reference. The seminal statement is clear. The 970 is incorporated by reference. All of its warts, all of its benefits, whatever it is. And so, again, the question we're trying to answer is, did the inventor have possession of that information, is answered in that incorporation sentence. If we start going down that pathway, we end up, hurray, whether it was separated by three paragraphs or three sentences, we will put our patent prosecution brethren and sisters in a difficult posture. Children wouldn't want to do that. They'll drum me out of the farm. But speaking of possession here, the amperage and the voltages in the 934 patent are quite different from those in the 970 patent. But there is a fair amount of overlap as well. And so we have a discussion in the briefing of various ranges and how the ranges do align. If this were a chemical case, we'd be talking about whether we sufficiently disclosed the genus in order to claim the species. And we have a lot of overlap. There's discussion, the one that I read earlier, where they specifically referenced the 970 patent's ability to use high voltage and low current, and then that's extended into particular examples. I do need to correct one thing I said, which was I said the burden is on Ford to show by clear and convincing evidence, and it shows you my amount of time I spend in district court. Here it's preponderance because it's a PTAB decision. But it does remain their burden. They need to convince you that, in fact, there was no incorporation by reference. If I can use my last few moments to talk about the abnormal and transient conditions and the engine on-off issue. My colleague said that, well, you know, Pace took the position in front of the board that it was the speed distinction, and that's what we were pointing to, that the claims required a torque threshold, and the prior art only showed speed, and therefore there was no showing of turning the engine on and off or the abnormal and transient conditions. It is true that we argued that, in fact, the prior art was deficient because it didn't show the use of torque in order to accomplish those things. But that doesn't absolve the board from pointing to something. So if they disagreed with us, if they disagreed that the prior art was only speed-based and therefore limited and couldn't invalidate, that doesn't absolve them of the responsibility under cuts forth and generally to tell us why and what it is that they found to turn the engine on and off. And they've got to do that. They can't simply throw up their hands and say that it must be in there someplace. And if there are no further questions, I'll... Thank you. Mr. Cordell will take these cases under advisement as well. Thank you. All rise.